**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **KRISTA BILLITER,** | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| **v.** | )   **NO. 3:16-CV-1426** |
| | )   **CHIEF JUDGE CRENSHAW** |
| **SP PLUS CORP. and MICHAEL** | ) |
| **R. VESSELS,** | ) |
| | ) |
| **DEFENDANTS** | ) |

## <u>MEMORANDUM OPINION</u>

Pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. No. 43), Defendant Vessels' Motion for Summary Judgment (Doc. No. 48), and Defendant SP Plus Corporation's Motion for Summary Judgment (Doc. No. 51).

## BACKGROUND

Krista Billiter is a former employee of SP Plus Corporation ("SP Plus"). Michael R. Vessels is also a former employee of SP Plus and was a co-worker of Billiter's. Billiter alleges that, while she was employed with SP Plus, SP Plus provided her with a company laptop computer. She claims that she used the company laptop not only for work, but also on occasion for access to her personal email and accounts. She complains that Vessels downloaded and removed her personal files from her private electronic devices without her knowledge and consent.

The Amended Complaint (Doc. No. 21) asserts that Billiter left SP Plus on or about October 15, 2015, but she admitted in response to SP Plus' Statement of Undisputed Facts that her employment ended on August 27, 2015 (Doc. No. 59 at ¶ 2). In the Amended Complaint, Billiter claims that she was required to return her laptop to SP Plus, but she was not allowed to remove personal files and information from it. In response to Defendant Vessels' Statement of Undisputed

Facts, however, Billiter admitted that, prior to returning her laptop to SP Plus, she erased her "side of the account," "returning it to its original form before turning it back in." (Doc. No. 60 at ¶ 38; Doc. No. 48-1 at 19 (Dep. at 70)).

Billiter avers that Defendant Vessels knowingly, intentionally, inappropriately, and without authorization accessed her private electronic accounts, including private information, photographs and videos. She further alleges that Vessels accessed this information in the course and scope of his employment with SP Plus, with SP Plus resources, through SP Plus access, and with SP Plus' knowledge. She believes that Vessels knowingly, inappropriately, and without authorization shared this private information, including her nude photos and videos, with other employees of SP Plus.

The Amended Complaint alleges that Defendants are responsible for negligent infliction of emotional distress, intentional infliction of emotional distress, violation of Tennessee's Wire Tapping and Electronic Surveillance Act, violation of the Federal Stored Communications Act, and invasion of her privacy, and that SP Plus was negligent in its hiring, supervision and retention of Vessels and is vicariously liable for Vessels' actions. All parties have filed Motions for Summary Judgment. Plaintiff has conceded that her negligent infliction of emotional distress claim should be dismissed, and both Defendants' Motions for Summary Judgment on that issue will be granted.

SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Pennington v. State Farm Mut. Automobile Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material

facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. Van Gorder v. Grand Trunk Western Railroad, Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. Id. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## SPOLIATION OF EVIDENCE

Preliminarily, the Court must determine whether to sanction Defendants for the spoliation of relevant evidence.[1] Billiter asserts, and Vessels does not dispute, that when her work laptop was returned to SP Plus, it was given to Vessels to work on and thereafter destroyed (Doc. No. 64, ¶¶ 33 and 38). Billiter contends that Vessels took out the SP Plus hard drive in his own laptop and replaced it with a personal hard drive; erased or tried to erase information on his laptop before returning it to SP Plus; and lost or hid the original SP Plus hard drive from his computer. Billiter further alleges that SP Plus, after receiving a letter from Billiter's counsel that requested that all

---

[1] Billiter filed a separate Motion for Sanctions (Doc. No. 46) that was denied without prejudice by the Magistrate Judge (Doc. No. 77) because it is also the basis for her Motion for Summary Judgment.

3

information and data be preserved and that Billiter's allegations immediately be investigated, did not investigate and did not preserve relevant evidence. She contends that SP Plus did not lock Vessels' access to his laptop when he was placed on administrative leave, did not send someone with Vessels to be sure he did not erase or destroy information when retrieving his laptop, and did not attempt to find the original SP Plus hard drive from Vessels' laptop.

Billiter maintains that destruction of this key evidence occurred after Defendants knew, or should have known, about the allegations of her complaint. She contends that Defendants' failure to take reasonable steps to preserve these key pieces of evidence has significantly prejudiced her ability to prove her causes of action. Billiter asserts that her own laptop, Vessels' laptop, and both hard drives from Vessel's computer are primary sources for proving that Vessel did (or did not) access and retrieve information from Billiter's electronic devices. She asks the Court to sanction both Vessels and SP Plus for this missing evidence by granting summary judgment in her favor.

Courts in the Sixth Circuit apply federal law in determining whether spoliation sanctions are appropriate. Beaven v. United States Dep't of Justice, 622 F.3d 540, 553 (6th Cir. 2010). Rule 37(e) of the Federal Rules of Civil Procedure provides that if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court, upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e)(1). If the court finds that the party acted with the intent to deprive another party of the information's use in the litigation, it may (1) presume that the lost information was unfavorable to the party; (2) instruct the jury that it may

or must presume the information was unfavorable to the party; or (3) dismiss the action or enter a default judgment. Fed. R. Civ. P. 37(e)(2).

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. Clark Constr. Group, Inc. v. City of Memphis, 229 F.R.D. 131, 136 (W.D. Tenn. 2005). This Court has recently defined "spoliation" as the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction. EPAC Technologies, Inc. v. Harpercollins Christian Publishing, Inc., 2018 WL 1542040 at * 10 (M.D. Tenn. March 29, 2018) see also United States v. Copeland, 321 F.3d 582, 597 (6th Cir. 2003).

When a party destroys evidence in anticipation of litigation, the trial court may impose sanctions for  spoliation. Stevenson v. Brennan, 2018 WL 1887418 at * 3 (E.D. Mich. Apr. 20, 2018). A party seeking a spoliation sanction because evidence was destroyed must establish that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Id. (citing Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC, 774 F.3d 1065, 1070 (6th Cir. 2014)). A party has a duty to preserve all evidence that it knows or should know is relevant to any present or future litigation, and a party must not destroy unique, relevant evidence that might be useful to an adversary. Clark, 229 F.R.D. at 136.

The Court has broad discretion to craft proper sanctions for spoliated evidence. Byrd v. Alpha Alliance Ins. Corp., 2012 WL 360033 (M.D. Tenn. Feb. 2, 2012) (citing Adkins v. Wolever, 554 F.3d 650, 651 (6th Cir. 2009)). Before determining if sanctions are appropriate, the Court must

first determine the trigger date when a party was on notice to safeguard the evidence; that is, when the obligation to preserve evidence arose. Clark, 229 F.R.D. at 136. In this case, there are issues of fact as to when that triggering date was for each Defendant.

For example, John Giles, an SP Plus employee, testified that his supervisor, Marcus Marasco,[2] was part of a conversation in which Vessels talked about accessing nude pictures of Billiter, and that conversation occurred about six months before Giles actually saw the pictures. (Doc. No. 45-2 at 100-103). He stated that he saw the pictures in March of 2016,[3] so the conversation would have been around September of 2015 (Id. at 102). Vessels, on the other hand, stated that he told Marasco about accessing Billiter's unsecure Dropbox account and the nude photos sometime prior to July 2015. (Id. at ¶¶ 16-19 and Doc. No. 45-3 at 160, 162). SP Plus claims that the conversation in which Vessels mentioned nude photographs of Billiter occurred sometime in March of 2016. (Doc. No. 67 at ¶ 16). Thus, there is a basis to find that an SP Plus supervisor knew, in September of 2015, or before July 2015, or in March of 2016, that Vessels was claiming to have taken private information from Billiter's computer.

Marasco testified that Vessels openly discussed his access to Billiter's unsecured Dropbox account and the nude pictures. (Doc. No. 45-5 at 56-57). Marasco testified that he overheard this conversation and he thought the conversation occurred after Billiter had left SP Plus (Id. at 59), but then he stated that he did not know if it happened prior to July of 2015. (Id. at 63). Marasco further testified that, in June of 2016, he heard, from a former employee named Julius, about an issue related to Vessels' accessing Billiter's laptop and copying her files. (Doc. No. 45-5 at 71, 73). Marasco then

---

[2] Marasco was also supervisor for Plaintiff and Vessels. (Doc. No. 64 at ¶¶ 2 and 5).

[3] Vessels denies that he showed Giles pictures of Billiter. (Doc. No. 64 at ¶ 40).

testified that this information from Julius was the first time he had heard such an assertion about Vessels (Id. at 73). It is for the jury to determine what parts, if any, of Marasco's story should be believed and how much weight, if any, it deserves.

SP Plus interviewed Marasco on June 7, 2016, concerning the allegations in the Complaint and the report from Julius (Doc. No. 67 at ¶ 65). On June 8, 2016, Marasco reported to the Vice President of Human Resources that Vessels had openly discussed that Billiter had an unsecured Dropbox account that included nude pictures (Doc. No. 67 at ¶ 66).

Billiter contends that SP Plus knew or should have known that the ultimately destroyed evidence would be relevant to possible future litigation as early as June or July 2015, when Vessels told his supervisor (Marasco) about accessing the nude photos in Billiter's accounts. Billiter argues that, at least by March of 2016, SP Plus knew or should have known that the ultimately destroyed evidence could be relevant to future litigation when Vessels showed the nude photos to other employees, including Giles. Billiter also avers that SP Plus was on notice of this pending litigation when it received counsel's April 12 and April 28, 2016 letters[4] asking it to preserve all data and information and to immediately investigate the situation. Billiter contends that SP Plus was again put on notice when she filed her Complaint in this action on May 19, 2016. Finally, Billiter argues that Julius' communication with Marasco again put SP Plus on notice in June of 2016. Despite all this notice, Billiter argues, even when its investigation began, SP Plus took no action to preserve data and information in the control of its employee, Vessels, who was alleged to have illegally and

---

[4] Defendants do not dispute that counsel for Plaintiff sent a letter on April 12, 2016, requesting that all data and information be preserved and that an investigation begin to prevent further distribution of the photographs or videos. (Doc. No. 67 at ¶¶ 56 and 58; Doc. No. 64 at ¶¶ 56 and 58).

inappropriately used his SP Plus laptop, system and/or access to obtain Billiter's personal information and photos. There is no evidence before the Court that, *to this day*, SP Plus has done anything to preserve Vessels' hard drives.

Even knowing that Vessels had attempted to erase one hard drive, SP Plus did nothing in response to that fact to retrieve that information or locate the other hard drive. Vessels' supervisor testified that SP Plus did not ask Vessels where the original SP Plus hard drive he removed could be found. (Id. at ¶ 79). Moreover, there has been no investigation or effort to locate or recover the original SP Plus hard drive that Vessels removed from his work laptop. (Id. at ¶ 82).

In June of 2016, SP Plus suspended Vessels while it conducted its investigation concerning Billiter's photos (Doc. No. 64 at ¶ 72). On June 22, 2016, SP Plus officials told Vessels that he needed to hand over his work laptop to be sent away for investigation, but he did not have his laptop with him at work; instead, it was at home. (Id. at ¶ 73). Vessels was allowed to leave SP Plus to go, alone, to retrieve his work laptop from home. (Id. at ¶¶ 75-76). Vessels' supervisor testified that, while Vessels was at home retrieving his laptop, Vessels turned on the laptop and conducted a search for ways to erase data on the hard drive. (Id. at ¶ 77). It is undisputed that Vessels took out the SP Plus hard drive and put in one of his own personal hard drives after this lawsuit was filed (Id. at ¶¶ 61-62).

Defendants do not dispute that Vessels was officially terminated by SP Plus on June 29, 2016, for two reasons: (1) the forensic report on his laptop showed he had attempted to delete and wipe his computer, which SP Plus determined to be interference with an active investigation; and (2) for accessing inappropriate websites on his work computer. (Doc. No. 64 at ¶ 108 and Doc. No.

67 at ¶ 108). When Vessels and SP Plus knew or should have known they had a duty to preserve this evidence involves credibility determinations and factual issues.

There are genuine issues of fact as to whether Vessels and SP Plus destroyed this evidence with a culpable state of mind. The requisite culpable state of mind may be established through a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it. Stevenson, 2018 WL 1887418 at * 5. If Defendants knew this evidence was relevant to potential litigation and destroyed the evidence anyway, then a jury could find that such destruction was deliberate. There is evidence that Vessels erased one hard drive and failed to return another hard drive after he learned about the investigation. It would not be unreasonable for a jury to find that Vessels intentionally destroyed this evidence and that SP Plus did nothing to stop him, so there is a basis upon which to conclude that this evidence was destroyed or lost with a culpable state of mind. At the very least, there are factual questions as to this issue.

Finally, it is obvious that the missing evidence is relevant to Billiter's claims. This evidence is the heart of Billiter's claim. She alleges that Vessels copied information from her work laptop (which was destroyed) onto Vessels' work laptop. Vessels' SP Plus hard drive is missing, and Vessels' personal hard drive has allegedly been erased, meaning that Billiter never had a chance to examine them or have experts examine them to determine whether Vessels had accessed, uploaded or copied her personal information onto either hard drive. To prove her claim, Billiter needed to be able to evaluate and test her laptop and Vessels' hard drives. Even SP Plus agreed that Vessels' efforts to delete or erase files on his hard drive interfered with SP Plus' own investigation. (Doc. No.

67 at ¶ 105). Billiter's ability to prove how Vessels may have obtained access, and whether he in fact did so, is seriously prejudiced by the loss of this evidence.[5]

Defendant SP Plus contends that Billiter's request for sanctions is untimely because she has known about this missing evidence for many months. It also boldly contends that it had no duty to preserve Billiter's laptop or Vessels' original hard drive and that any data on Vessels' personal hard drive would have been irrelevant. The Court finds that Billiter's request for sanctions in her Motion for Summary Judgment is not untimely. As noted, there is no longer a separate Motion for Sanctions pending. Billiter filed the pending motion after deposing the SP Plus corporate witnesses and exploring these issues of spoliation with them. In addition, when the duty to preserve arose presents issues of fact, and the missing information could certainly be relevant.

Defendant Vessels argues that Billiter has not demonstrated that the information she seeks cannot be restored or replaced through additional discovery. He also asserts that, even assuming he did spoil evidence, harsh sanctions are not warranted under these circumstances because he did not spoil evidence with an intent to deprive Billiter of information related to this lawsuit. The Court is unsure to what additional discovery Vessels refers, but there are still material issues of fact concerning this issue.

Because of all the factual issues, the Court cannot determine whether a sanction is appropriate at this time, except to say that it will not grant summary judgment for Billiter. The Court need not decide at this juncture what type of adverse inference jury instruction is warranted. For

---

[5] For example, in response to Billiter's statement of fact concerning ways Vessels could have accessed her information, SP Plus stated "there is no evidence that any such actions took place." (Doc. No. 67 at ¶ 25). The missing evidence would very likely have provided that evidence, one way or the other.

purposes of summary judgment, it suffices to say that Billiter has a colorable claim to an adverse inference instruction at trial. See Jones v. Staubli Motor Sports Div. of Staubli American Corp., 897 F.Supp.2d 599, 609 (S.D. Ohio 2012). For these reasons, Billiter's Motion for Summary Judgment (Doc. No. 43) will be denied.

VESSELS' MOTION

A. Stored Communications Act ("SCA")

Billiter alleges that Vessels, without authorization, accessed her private electronic accounts, including (upon information and belief) an email account, DropBox account and other private electronic accounts, in violation of the SCA. (Doc. No. 21 at ¶ 13).

The SCA provides that anyone who intentionally accesses, without authorization, a facility through which an electronic communication service is provided, or intentionally exceeds an authorization to access that facility, and thereby obtains, alters, or prevents authorized access to a wire or electronic communication in electronic storage in such system shall be punished as provided in the statute. 18 U.S.C. § 2701(a).

"Electronic communication" is defined in the SCA as any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce" (with certain exceptions not argued here). 18 U.S.C. § 2510(12).

"Electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

"Electronic storage" is defined as (A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and (B) any storage of

such communication by an electronic communication service for purposes of backup protection of such communication. 18 U.S.C. § 2510(17).

Therefore, the SCA applies to (1) electronic communications (2) that were transmitted through an electronic communication service, (3) that are in electronic storage, and (4) that are not public. <u>Combier v. Portelos</u>, 2018 WL 3302182 at * 11 (E.D. N.Y. July 5, 2018). The statute provides that any person aggrieved by an SCA violation may sue the violator, provided that he or she can show that the act was violated with a knowing or intentional state of mind. 18 U.S.C. § 2707(a); <u>Cardinal Health 414, Inc. v. Adams</u>, 582 F.Supp.2d 967, 975 (M.D. Tenn. 2008). The statute does not provide a remedy for unauthorized access to *all* digital materials. It covers only actions in which a party obtains an electronic communication "while it is in electronic storage." <u>Cobra Pipeline Co., Ltd. v. Gas Natural, Inc.</u>, 132 F.Supp.3d 945, 949 (N.D. Ohio 2015).

Vessels argues that the SCA does not apply to Billiter's Dropbox account.[6] Vessels bases his factual assertions concerning Dropbox on the Dropbox website and Wikipedia (Doc. No. 49 at 5-6). He does not include these facts in his Statement of Undisputed Facts. Both parties cite cases involving emails, not photos in Dropbox. Plaintiff cites cases involving Dropbox, but those cases were analyzed under a motion to dismiss standard, determining whether the plaintiffs had sufficiently alleged their claims.[7] The Court cannot assume facts about Dropbox simply because they

---

[6] Vessels asserts that Billiter's SCA claim is limited to allegations that he improperly accessed her Dropbox account, citing "Statement of Undisputed Facts ¶ 34." Billiter's response to Vessels' Statement of Undisputed Facts, ¶ 34, does not contain such an admission (Doc. No. 60 at ¶ 34). If, in fact, Vessels is referring to the response to his Statement of Fact ¶ 30, Billiter denied that fact as written. (Doc. No. 60 at ¶ 30).

[7] <u>Lazette v. Kulmatycki</u>, 949 F.Supp.2d 748 (N.D. Ohio 2013); <u>Lane v. Brocq</u>, 2016 WL 1271051 (N.D. Ill. March 28, 2016); <u>TLS Mgmt. and Marketing Servs., LLC v. Rodriguez-Toledo</u>, 260 F.Supp.3d 154 (D. P.R. 2016).

are on the Dropbox website or Wikipedia. Until these factual issues are established, the Court is unable to determine whether Dropbox meets the definitions of the SCA. Accordingly, Vessels' Motion for Summary Judgment on Billiter's SCA claim will be denied.

## B. Tennessee Wire Tapping Act ("TWA")

Tennessee law prohibits intentionally intercepting or endeavoring to intercept any wire, oral or electronic communication. Tenn. Code Ann. § 39-13-601(a)(1)(A). It also prohibits intentionally disclosing or endeavoring to disclose to any other person the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception in violation of the statute. Tenn. Code Ann. § 39-13-601(a)(1)(B). A person aggrieved by the violation of Section 39-13-601 may bring a civil action to recover money damages against the person engaged in that violation. Tenn. Code Ann. § 39-13-603.

The TWA defines "intercept" as the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. Tenn. Code Ann. § 40-6-303(11); Cardinal Health, 582 F.Supp.2d at 979.[8] In other words, for a communication to be "intercepted," it must be acquired during the "flight" of the communication. Id. Congress did not intend for "intercept" to apply to electronic communications when those communications were in electronic storage. Luis v. Zang, 833 F.3d 619, 628 (6th Cir. 2016).

The Court finds that Billiter has not shown that Vessels, or anyone at SP Plus, "intercepted" information in her Dropbox or other accounts. She has not even alleged that when she uploaded photos to Dropbox, at that very second, Vessels intercepted and accessed those photos. Indeed, the

---

[8] In Cardinal Health, a case involving emails, the Court stated that the overwhelming body of case law concludes that, unless an e-mail is actually acquired in its split second transmission over a computer network, if cannot be "intercepted" as that term is reasonably understood. Cardinal Health, 582 F.Supp.2d at 979.

Amended Complaint alleges that Vessels accessed her private information at some point after she turned over her laptop to SP Plus (Doc. No. 21 at ¶ 13). Plaintiff has not shown genuine issues of material fact as to the TWA issue, and Vessels is entitled to summary judgment on that claim.

C. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Tennessee law, a plaintiff must establish that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and (3) the defendant's conduct resulted in serious mental injury to the plaintiff. Cossairt v. Jarrett Builders, Inc., 292 F.Supp.3d 779, 788 (M.D. Tenn. 2018). A plaintiff must show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Id.

The Tennessee Supreme Court has adopted and applied the high threshold standard of the Restatement (Second) of Torts, which states:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Cossairt, 292 F.Supp.3d at 789 (citing Restatement (Second) of Torts, Section 46, Comment D).

The standard for outrageous conduct is high, and cases finding conduct sufficient to support an intentional infliction of emotional distress claim are few and far between. Cossairt, 292 F.Supp.3d

at 789 (collecting cases). The Court finds that Billiter has not met this high standard. The alleged conduct, even if true, is not "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.

Even if the alleged misconduct were sufficiently outrageous, Billiter has not sufficiently demonstrated that she suffered a serious or severe mental injury, which is one such that a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances. Cossairt, 292 F.Supp.3d at 789; Rogers v. Louisville Land Co., 367 S.W.3d 196, 208 (Tenn. 2012). Vessels' Motion for Summary Judgment on the intentional infliction of emotional distress claim will be granted, and that claim will be dismissed.

D. Invasion of Privacy

Billiter alleges that the actions of Defendants constituted an invasion of her privacy. The Tennessee Court of Appeals recognized the common law tort of invasion of privacy in Roberts v. Essex Microtel Assoc., 46 S.W.3d 205, 210-11 (Tenn. Ct. App. 2000). Two years later, the Tennessee Supreme Court agreed that a plaintiff may recover damages in Tennessee for an unreasonable intrusion into his or her private affairs. Given v. Mullikin, 75 S.W.3d 383, 411 (Tenn. 2002). One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. Id. Thus, in order to recover under this tort, a plaintiff must plead and establish three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude, seclusion or private affairs (3) which would be highly

offensive to a reasonable person. <u>Cunningham v. Vanderbilt Univ.</u>, 2017 WL 1076478 at * 2 (M.D. Tenn. Feb. 28, 2017).

Vessels contends that he accessed only publicly available videos and photos. His citation for this assertion, Statement of Facts ¶ 20, does not support this contention. First of all, Statement of Facts ¶ 20 in Vessels' Statement of Undisputed Facts (Doc. No. 50) is not the same as paragraph 20 in Billiter's Responses to the same Statement of Undisputed Facts (Doc. No. 60). Secondly, neither paragraph 20 in these two documents states that Vessels' reviewed *only* publicly available videos and photos.

The Court finds that there are questions of fact as to whether Vessel accessed information that was not publicly available. There are also questions of fact as to whether any such access or disclosure would be highly offensive to a reasonable person. As noted above, there are genuine disputes of material fact as to how, if at all, Vessels was able to access Billiter's Dropbox account, and the best evidence on that issue no longer exists. Accordingly, Vessels' Motion for Summary Judgment on the invasion of privacy claim will be denied.

E. <u>Conclusion</u>

Vessels' Motion for Summary Judgment will be granted in part and denied in part. Billiter's claims against Vessels for violation of the Tennessee Wire Tapping Act and for negligent and intentional infliction of emotional distress will be dismissed.

SP PLUS' MOTION

A. <u>Tennessee Wiretapping Act</u>

For the same reasons Billiter's TWA claim against Vessels should be dismissed, Billiter's TWA claim against SP Plus also should be dismissed. SP Plus' motion concerning the TWA will be granted, and Billiter's TWA claim against SP Plus will be dismissed.

B. <u>Stored Communications Act</u>

SP Plus argues that Plaintiff cannot establish that her pictures were in temporary intermediate storage or stored by an electronic communication service for purpose of back-up protection. As with Vessels, there are factual issues surrounding Billiter's use of Dropbox and Vessels' access thereto. SP Plus argues that Billiter has no evidence that SP Plus equipment was used, but the reason Billiter has no evidence is because the relevant evidence was destroyed. And whether Dropbox falls within the SCA, as explained above, involves genuine issues of fact. Therefore, as with Vessels, SP Plus' motion concerning the SCA will be denied.

C. <u>Intentional Infliction of Emotional Distress</u>

For the same reasons that Billiter cannot establish an intentional infliction of emotional distress claim against Vessels, she also cannot establish that claim against SP Plus. Therefore, SP Plus' motion will be granted as to this claim, and Billiter's claim for intentional infliction of emotional distress against SP Plus will be dismissed.

D. <u>Invasion of Privacy</u>

As noted above, one who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. <u>Given</u>, 75 S.W.3d at 411.

Billiter contends that Vessels intruded upon her privacy by accessing and disseminating her private photos and videos. There is no evidence that SP Plus, the corporation, accessed or disseminated Billiter's private information, but it could be vicariously liable for Vessels' behavior. Because there are issues of fact as to Vessels' alleged invasion of Billiter's privacy, SP Plus is not entitled to summary judgment on this claim.

E. *Respondeat Superior*/Vicarious Liability

Billiter alleges that SP Plus is vicariously liable for the misconduct of Vessels. The doctrine of *respondeat superior* renders employers vicariously liable for the torts their employees commit while acting within the scope of their employment. Tennessee Farmers Mut. Ins. Co. v. American Mut. Liability Ins. Co., 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992). In order to hold the employer liable, the plaintiff must prove that (1) the person who caused the injury was an employee; (2) the employee was on the employer's business; and (3) the employee was acting within the scope of his employment when the injury occurred. Id. The doctrine of respondeat superior requires the weighing and balancing of the facts and circumstances of each case. Id.

Here, there is no dispute that Vessels was an employee of SP Plus. There are questions of fact about whether Vessels was on his employer's business at the time(s) of his alleged misconduct. Billiter alleges that Vessels accessed her computer using SP Plus equipment because he was authorized by SP Plus to access other computers as part of his job. She contends that Vessels decided which laptop she received and, therefore, could have made it even more accessible for himself. Billiter asserts that when she returned her laptop to SP Plus, it again went to Vessels, who had it destroyed. SP Plus argues that any attempt to copy or upload nude photos from Vessels' computer would clearly be a deviation from SP Plus' business. As noted above, however, this

doctrine requires the weighing and balancing of the facts and circumstances of each case, and the Court cannot weigh and balance the evidence on this motion.

SP Plus contends that Billiter cannot prove that Vessels used his work laptop to access her work laptop or other personal devices. Again, the lack of evidence on this issue is because, at least in part, of the spoliation of evidence by Defendants. The trier of fact will need to weigh the competing facts to determine this element of Billiter's claim.

Generally, whether an employee is acting within the scope of his or her employment is a question of fact. Hughes v. Metro. Gov't of Nashville and Davidson Cty., 340 S.W.3d 352, 361 (Tenn. 2011). The limits of the scope of employment are dependent upon the facts of the particular case. Id. Courts frequently turn to the Restatement (Second) of Agency for a theoretical framework for deciding whether an employee's conduct is within the scope of his or her employment. Tenn. Farmers, 840 S.W.2d at 937. The Restatement provides, in relevant part, that conduct of a servant is within the scope of employment if (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master. Id. at 938. Conduct of the servant is *not* within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master. Id.

The Court finds that whether Vessels' actions were within the scope of his employment also involves questions of fact that cannot be determined on summary judgment. Working with computers, making decisions about computers, assisting others, sometimes through remote access - all these things have been alleged to be a part of Vessels' job. Some of this misconduct admittedly occurred at work, including Vessels' bragging about having access to Billiter's nude photos and then

actually showing those photos to at least one co-worker. Vessels' supervisor, Marasco, gained notice about these photos while at work. Whether Vessels' behavior was actuated, at least in part, by a purpose to serve his employer is more difficult; but for purposes of this motion, the Court finds there are genuine issues of material fact precluding summary judgment

Accordingly, SP Plus' Motion for Summary Judgment on the issue of *respondeat superior* and vicarious liability will be denied.

F. Negligent Hiring, Supervision and Retention

Billiter alleges that SP Plus was negligent in its hiring, supervision and retention of Vessels as an employee. Under Tennessee law, this claim may be maintained by establishing the elements of a negligence claim, plus evidence that the employer had knowledge of the employee's unfitness for the job. Brown v. Bd. of Educ. of Shelby Cty. Schools, 47 F.Supp. 3d 665, 685 (W.D. Tenn. 2014). A negligence claim requires proof of a duty of care owed to the plaintiff, breach of that duty by the defendant, injury or loss, actual causation, and proximate causation. Id.

Billiter has presented no evidence that SP Plus knew or should have known, when hiring Vessels, that he was "unfit" for the job or that he would invade the privacy of other employees in the ways Billiter has alleged. There is no support for alleging that SP Plus could foresee, when hiring Vessels, that he might access nude photos of a co-worker and disclose them to others. SP Plus is entitled to summary judgment on the negligent hiring claim.

With negligent supervision and retention, the question is harder, because Vessels' supervisor allegedly knew, at some disputed point in time, that Vessels was bragging about accessing nude photos of Billiter and that Vessels was showing those photos to co-workers. Whether those alleged facts actually occurred and, if so, when they occurred are disputed. Whether Marasco, as Vessels'

supervisor, should have done something after he found out about the nude photos is a question for the jury. Whether and when Marasco knew or should have known that Vessels' behavior should be investigated and that Vessels should be fired are other questions of fact. The Court cannot grant summary judgment on the negligent supervision and retention claims because of these factual disputes, and SP Plus' Motion for Summary Judgment on these issues will be denied.

G. Conclusion

SP Plus' Motion for Summary Judgment will be granted in part and denied in part. Billiter's claims for violation of the Tennessee Wiretapping Act, for negligent and intentional infliction of emotional distress, and for negligent hiring against SP Plus will be dismissed.

CONCLUSION

For all these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 43) will be denied; Defendant Vessels' Motion for Summary Judgment (Doc. No. 48) will be granted in part and denied in part; and Defendant SP Plus Corporation's Motion for Summary Judgment (Doc. No. 51) will be granted in part and denied in part.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE